# In the United States Court of Federal Claims

No. 24-2049C

(Filed: September 11, 2025)

|  |  |
|---|---|
| **LUKE KERL,** | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*James Barrett Kelly*, Alan Lescht & Associates, P.C., Washington D.C., for Plaintiff. On the briefs was *J. Cathryne Watson*, Alan Lescht & Associates, P.C., Washington D.C.

*Daniel Bertoni*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were *Yaakov M. Roth*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, *Eric P. Bruskin*, Assistant Director. Of counsel was *Wendy A. Harris*, Attorney, Commercial and Appellate Division, United States Postal Service.

### OPINION AND ORDER

**SOLOMSON, Chief Judge.**

      Plaintiff, Mr. Luke Kerl, claims that Defendant, the United States, owes him unpaid salary pursuant to statute — a classic money-mandating claim within this Court's Tucker Act jurisdiction. The government moves to dismiss, arguing *not* that Mr. Kerl actually received the salary payments at issue — a contention that, in any event, would be more appropriate for summary judgment or trial — but that the government nevertheless met its statutory duty to pay Mr. Kerl. How is it possible that the government met its statutory duty to pay Mr. Kerl his salary even though he did not receive payment? Third-party fraudsters executed a phishing scheme, and managed to get the government to pay them instead of Mr. Kerl. According to the government, Mr. Kerl was effectively paid when the government transmitted his salary to the fraudsters.

The government's position does have a certain commonsense ring to it insofar as the least cost avoider rule from the realm of law and economics theory may well counsel in favor of placing responsibility on Mr. Kerl for falling prey to the phishing scheme and, ultimately, for the lost salary. But this Court may neither legislate from the bench nor engineer new rules as if it is engaged in the development of the common law. Instead, this Court's only role is to ask whether the government met its statutory obligation to pay Mr. Kerl. For the reasons explained below, this Court concludes that, at least at this stage of the case — and construing the alleged facts in the light most favorable to Mr. Kerl — he has a plausible claim within this Court's jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Mr. Kerl was employed by the United States Postal Service ("USPS") from sometime in December 2021 to sometime in the summer of 2023. ECF No. 1 ("Compl.") ¶ 4.[2] As a Postal Service employee, Mr. Kerl earned an hourly wage, plus overtime pay for work more than 40 hours per week. *Id.* ¶ 5. The terms of his employment required that Mr. Kerl be paid every two weeks. *Id.* ¶ 6.

The Postal Service used an online platform called LiteBlue, both to track Mr. Kerl's hours, as well as to process his pay, which the USPS direct deposited into Mr. Kerl's bank account. Compl. ¶¶ 7–8. Mr. Kerl's bank account information, including his account number and routing number — for direct deposit purposes — were stored on LiteBlue's platform. Mr. Kerl maintained the login credentials for the LiteBlue website. *Id.*

Sometime in late 2022, scammers set up a fake website that mimicked the LiteBlue website. Compl. ¶ 9. The scammers then lured Mr. Kerl to the fake website, where he entered his login credentials for the actual LiteBlue website. *Id.* By doing so, he unknowingly provided the scammers with his login credentials to the real LiteBlue website. *Id.* This is known as a "phishing" scam.[3] The scammers subsequently used

---

[1] For the purposes of deciding a motion pursuant to Rule 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), the Court assumes that the facts pled in the complaint are true. *See e.g.*, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

[2] Citations to specific page numbers within electronic filings are to the ECF-stamped page numbers in the header of the filed PDF.

[3] https://consumer.ftc.gov/articles/how-recognize-avoid-phishing-scams ("Scammers use email or text messages to trick you into giving them your personal and financial information.").

Mr. Kerl's login information to access his LiteBlue account, where they replaced Mr. Kerl's bank account information with their own. *Id.* ¶ 10. As a result, the Postal Service sent Mr. Kerl's pay to the scammers. *Id.* This went on for about two pay periods, during December 2022. *Id.* ¶¶ 11–13.

In total, Mr. Kerl did not receive approximately $4,000 in salary that he was owed. Compl. ¶ 14. Mr. Kerl requested the payment of these wages from the Postal Service but was denied. *Id.* ¶ 18.

On December 12, 2024, Mr. Kerl filed his complaint in this Court against the government. Compl. In his complaint, Mr. Kerl sets forth three counts. In Count I, Mr. Kerl alleges that the Postal Service violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, by failing to pay Mr. Kerl minimum wages during the pay periods in which his pay was diverted to the scammers. *Id.* ¶¶ 21–23. Mr. Kerl claims that he is entitled to unpaid minimum wages, statutory liquated damages, pre- and post-judgment interest, and attorney's fees. *Id.* ¶ 24.

In Count II, Mr. Kerl alleges that the Postal Service violated the FLSA by not paying Mr. Kerl overtime owed to him during the pay periods in which the government paid the scammers instead of Mr. Kerl. Compl. ¶¶ 26–29. For that violation as well, Mr. Kerl claims that he is entitled to unpaid minimum wages, statutory liquated damages, pre- and post-judgment interest, and attorney's fees. *Id.* ¶ 30.

Finally, in Count III, Mr. Kerl alleges that he had an express or implied contract with the USPS for it to pay Mr. Kerl for the hours that he worked, and that the government breached that contract when the government failed to pay him properly. Compl. ¶¶ 32–35. Mr. Kerl claims damages for breach of contract. *Id.* ¶ 36.

On March 12, 2025, the government filed a motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6). ECF No. 6 ("Def. MTD"). On April 10, 2025, Mr. Kerl responded to the government's motion to dismiss. ECF No. 9. On April 24, 2025, the government filed its reply to Mr. Kerl's response. ECF No. 10 ("Pl. Resp."). On July 23, 2025, the Court heard oral argument on the parties' motions. *See* ECF No. 15 ("Tr.").

## II.   STANDARD OF REVIEW

Motions to dismiss for lack of subject-matter jurisdiction under RCFC 12(b)(1) can be either facial or factual challenges. *Perry v. United States*, 149 Fed. Cl. 1, 11 (2020), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021). In a factual challenge, the government "challenges the truth of jurisdictional facts alleged in the complaint," and "the court accepts as true [only] all *uncontroverted* factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Chemehuevi Indian Tribe v. United States*, 104 F.4th 1314, 1320 (Fed. Cir. 2024) (cleaned up and emphasis added). A facial challenge, on the other hand, "simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations," and all of the plaintiff's non-conclusory factual "allegations are taken as true and construed in a light most favorable to the complainant." *Id.* at 1320–21 (cleaned up).

Here, the government's motion to dismiss for lack of standing asserts a facial challenge to this Court's jurisdiction to decide Mr. Kerl's claims. Accordingly, this Court assumes that all the nonconclusory factual allegations in Mr. Kerl's complaint are true for the purposes of resolving the government's motion.

In deciding a motion to dismiss for failure to state a claim as a matter of law pursuant to RCFC 12(b)(6), the Court views the facts in the light most favorable to the plaintiff and accepts as true all factual allegations — but not conclusory legal assertions — contained in the complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). For a plaintiff's complaint to survive a motion to dismiss, the Court — viewing the facts in the light most favorable to the plaintiff — must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations and internal quotation marks omitted); *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007) (noting that the Court's duty is not to determine "whether the claimant will ultimately prevail" when ruling on a 12(b)(6) motion to dismiss).

On the other hand, a plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555

4

(citations omitted).  The Court must dismiss a complaint "when the facts asserted by the claimant do not entitle him to a legal remedy."  *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### III. SUBJECT-MATTER JURISDICTION

The Tucker Act, 28 U.S.C. § 1491, is this Court's primary jurisdictional statute.  It provides, in part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).  The Tucker Act "both confers jurisdiction on the Court of Federal Claims and waives the sovereign immunity of the United States for claims for money damages founded on, inter alia, acts of Congress."  *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 875 (Fed. Cir. 2007) (citing *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003); and *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

More specifically, the Tucker Act contemplates "three types" of "underlying monetary claims":  (1) contract claims; (2) illegal exaction claims where "the plaintiff has paid money over to the [g]overnment, directly or in effect, and seeks return of all or part of that sum" (or that the "[g]overnment has the citizen's money in its pocket"); and (3) money-mandating claims. *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004) (citing *United States v. Testan,* 424 U.S. 392, 400 (1976), and *Martinez v. United States,* 333 F.3d 1295, 1303–03 (Fed. Cir. 2003); and quoting *Eastport S.S. Corp. v. United States,* 178 Ct. Cl. 599, 372 F.2d 1002, 1007–08 (1967)).

For money-mandating claims, a plaintiff cannot merely invoke the Tucker Act for this Court to have jurisdiction; rather, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Greenlee Cnty.*, 487 F.3d at 875 (quoting *Fisher,* 402 F.3d at 1172; and citing *White Mountain,* 537 U.S. at 472).  In *Fisher*,

5

our appellate court — the United States Court of Appeals for the Federal Circuit — held that money-mandating "jurisdiction under the Tucker Act exists if the statute, regulation, or constitutional provision that is the basis for the complaint 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained,' . . . and is 'reasonably amenable to the reading that it mandates a right of recovery in damages[.]'" *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (first quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983); then quoting *White Mountain*, 537 U.S. at 473; and citing *Fisher*, 402 F.3d at 1173). "[C]onsistent with the requirement from *Mitchell* that a source of law be money-mandating 'for the damage sustained,' that source must also be reasonably amenable to the reading that the plaintiff is 'within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established.'" *Id.* (first quoting *Mitchell,* 463 U.S. at 217; and then quoting *Greenlee*, 487 F.3d at 876).

In sum, a plaintiff's burden at the jurisdictional stage is not particularly onerous for a money-mandating claim:

> In determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits.

*Jan's Helicopter*, 525 F.3d at 1309; *see also Brodowy v. United States,* 482 F.3d 1370, 1375 (Fed. Cir. 2007) ("Where plaintiffs have invoked a money-mandating statute and have made a non-frivolous assertion that they are entitled to relief under the statute, we have held that the Court of Federal Claims has subject-matter jurisdiction over the case.").[4]

This Court has a duty to verify its jurisdiction even when uncontested. *Reoforce, Inc. v. United States*, 853 F.3d 1249, 1263 (Fed. Cir. 2017) ("[B]oth parties agree that [plaintiff] has satisfied its standing requirements in this case. Nevertheless, because

---

[4] On the other hand, where a "plaintiff's case does not fit within the scope of the [money-mandating] source . . . plaintiff loses on the merits for failing to state a claim on which relief can be granted." *Jan's Helicopter*, 525 F.3d at 1307 (quoting *Fisher*, 402 F.3d at 1175–76).

6

standing is a jurisdictional prerequisite, we must independently determine whether [plaintiff] has satisfied its Article III standing requirements."); *see* RCFC 12(h)(3). As noted *supra*, Mr. Kerl's complaint consists of three counts: the first two for money owed pursuant to the FLSA, and the last for breach of contract. Putting aside the breach of contract claim for now, there is no question this Court possesses subject-matter jurisdiction to decide Mr. Kerl's FLSA-based claims; they are classic money-mandating claims.

The FLSA is a money-mandating statute and Mr. Kerl's complaint contains non-frivolous factual allegations that, when assumed to be true, demonstrate: (1) he is an employee covered by the FLSA; and (2) that the government owes him money pursuant to that statute. That is all that is necessary for Mr. Kerl to establish subject-matter jurisdiction here, and the government does not assert otherwise.[5] *See, e.g.*, *Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014) (citing cases in support of the conclusion that "straight-forward logic and 30–year–old, multi-circuit, apparently unbroken precedent" demonstrates that "the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA"); *see also id.* at 1370 ("In 1974, Congress unmistakably provided for judicial imposition of monetary liability on the United States for FLSA violations."); *Alvarez v. United States*, 169 Fed. Cl. 96, 99 (2024) ("FLSA is a money-mandating source of law[.]" (citing *Abbey*, 745 F.3d at 1369)); *Alston v. United States*, 174 Fed. Cl. 177, 182 (2024) ("The [FLSA] . . . is a money-mandating statute conferring jurisdiction to the Court.").[6]

To the extent the government challenges Mr. Kerl's standing to pursue an FLSA claim here, that is not a question of subject-matter jurisdiction.[7] And to the extent that

---

[5] Tr. 5:14-19 (government counsel agreeing that "the Federal Circuit has been clear than an [alleged] FLSA violation is within this Court's jurisdiction").

[6] Indeed, our jurisdiction over FLSA claims against the government (exceeding $10,000) is exclusive. *Saraco v. United States*, 61 F.3d 863, 866 (Fed. Cir. 1995) ("[T]he Federal Circuit in *Zumerling v. Devine* held that jurisdiction of cases under the FLSA was provided only by the Tucker Act." (discussing *Zumerling*, 769 F.2d 745 (Fed. Cir. 1985)).

[7] In *Superior Waste Mgmt. LLC v. United States*, this Court explained the difference between subject-matter jurisdiction and standing:

> In contrast to standing, subject matter jurisdiction "refers to the class of cases that the court is authorized to hear." *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1052 (Fed. Cir. 2012) (citing *Rhone Poulenc*, 880 F.2d at 402–03)); *see also Palmer v. United States*, 38 Fed. Cl. 316, 320 (1997) ("Subject matter jurisdiction relates to

the government challenges Mr. Kerl's right to recover pursuant to the terms of the FLSA, that is a merits question, not a jurisdictional one. The Court next turns to the government's arguments in its motion to dismiss.

## IV. DISCUSSION

### A. Mr. Kerl's Contract Claim Borders on the Frivolous and, In Any Event, Was Withdrawn

The Court begins with Mr. Kerl's breach of contract claim in Count III of his complaint because it presents the most straightforward issue for resolution. *See* Compl. ¶ 32 ("A valid contractual agreement existed between Plaintiff and Defendant, either expressly or impliedly."). In short, this claim borders on the frivolous, as it "is well-established that the federal employment relationship is generally governed by statute rather than contract." *Lee v. United States*, 41 Fed. Cl. 36, 39 (1998) (collecting cases). Thus, "federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (citations omitted); *see Doe v. United States*, 513 F.3d 1348, 1359 (Fed. Cir. 2008) ("[F]ederal employee benefits and pay are governed by statute, not by contract.").

---

the area of substantive law that Congress has empowered the court to adjudicate."), *aff'd*, 168 F.3d 1310 (Fed. Cir. 1999); *CYR Const. Co. v. United States*, 27 Fed. Cl. 153, 161 (1992) ("Subject matter jurisdiction relates to the court's general powers to adjudicate in specific areas of substantive law.").
. . .

Because the concepts of standing and subject matter jurisdiction share some characteristics, and one is considered a prerequisite to the other, they are often at risk of conflation. But as courts across the nation have recognized, parties and courts should not "conflate[ ] separate and distinct concepts: standing and subject matter jurisdiction." *Wendland v. Gutierrez*, 580 F. Supp. 2d 151, 153 n.2 (D.D.C. 2008) (rejecting argument that "the court has subject matter jurisdiction because [plaintiff] satisfies the requirements for standing"); *see also Nat'l Health Plan Corp. v. Teamsters Loc. 469*, 585 F. App'x 832, 834 n.2 (3d Cir. 2014) ("The question of whether the district court had subject-matter jurisdiction is, however, distinct from the question of whether [a plaintiff] ha[s] 'standing to invoke the authority of a federal court.'" (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 2006)).

169 Fed. Cl. 239, 253–54 (2024).

As a (former) USPS employee, Mr. Kerl's employment was governed by the Postal Reorganization Act of 1970, which specifies, with exceptions not relevant here, that "the Postal Service shall appoint all officers and employees of the Postal Service." 39 U.S.C. § 1001(a); *see McLean v. United States*, 538 F.2d 346 (Ct. Cl. 1976) ("[The Postal Reorganization Act] provides that all officers and employees of the Postal Service are required to be appointed rather than hired by contract."); *Diaz v. United States*, 156 Fed. Cl. 270, 276 (2021) ("[O]ne can only become a USPS 'employee' by 'appointment.'").

Mr. Kerl alleged no facts demonstrating that the USPS employed him via a contract, nor is it likely he could have done so (as a matter of law). In the absence of any non-conclusory facts in Mr. Kerl's complaint — as opposed to conclusory statements of law — supporting the existence of a contract, this Court doubts whether Mr. Kerl's contract claim could even survive a motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1), let alone for failure to state a claim pursuant to RCFC 12(b)(6). The Court need not decide either of those questions, however, because Mr. Kerl withdrew his contract claim in the face of the government's motion to dismiss. Pl. Resp. at 2 n.2 ("Mr. Kerl does not dispute that his employment was pursuant to appointment, rather than contract."). As the Court sees no basis whatsoever for Mr. Kerl's contract claim, the Court cautions Mr. Kerl's counsel to be more careful. Parties may not simply throw claims or arguments against the judicial wall to see if the opposing party (or this Court) will let them stick. *See* RCFC 11.[8]

### B. Mr. Kerl has Standing to Pursue his Money-Mandating Claim

The government asserts that "Mr. Kerl's injury was not caused by the Postal Service" and, therefore, "he lacks standing to bring this action[.]" Def. MTD at 8. According to the government, Mr. Kerl's complaint does not establish causation because he "fails to connect his injury *with any action of the Postal Service*." Def. MTD at 14 (emphasis added). The government's standing argument has about as much merit as Mr. Kerl's contract claim.

### 1. Standing principles

The Supreme Court has developed "specific but overlapping doctrines rooted in

---

[8] During oral argument, counsel for Mr. Kerl could not explain a reasonable basis for asserting the contract claim. Tr. 38:12–40:6.

the [case-or-controversy] Article III inquiry, which must be met for a controversy to be justiciable, including standing, ripeness, and a lack of mootness." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does.").

Although Article III's requirements, including standing, are jurisdictional in a broad sense, they are more accurately characterized as prerequisites to subject matter jurisdiction. *See, e.g.*, *Gardner v. Mutz*, 962 F.3d 1329, 1337 (11th Cir. 2020) (discussing "Article III's jurisdictional prerequisites"); *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016) "([S]tanding is a prerequisite to a federal court's subject matter jurisdiction[.]"); *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) ("Article III standing is a prerequisite to a federal court's exercise of subject-matter jurisdiction."); *Rivera v. Internal Revenue Serv.*, 708 F. App'x 508, 513 (10th Cir. 2017) ("Under Article III of the Constitution, standing is a prerequisite to subject matter jurisdiction[.]").[9]

In *Lujan v. Defenders of Wildlife*, the United States Supreme Court summarized the test for "the irreducible constitutional minimum of standing" as follows:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. 555, 560–61 (1992) (cleaned-up).

---

[9] *See also California Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 46 (D.D.C. 2012) ("[A] party's Article III standing is a prerequisite to subject matter jurisdiction."); *Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *10 (S.D.N.Y. June 2, 2020) (concluding that "Article III standing is a necessary, non-waiveable prerequisite to subject matter jurisdiction").

The United States Court of Federal Claims, "though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." *Starr Int'l Co. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017) (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)) (internal quotation marks omitted). Indeed, the Federal Circuit has expressly applied Article III justiciability requirements to Tucker Act claims against the United States. *Glass v. United States*, 258 F.3d 1349, 1355 (Fed. Cir. 2001). That makes a great deal of sense, as this Court is empowered to enter final judgments on any "claim, suit, or demand against the United States arising out of the matters involved in the *case or controversy*." 28 U.S.C. § 2519 (emphasis added). That statute tracks Article III's "case-or-controversy requirement," *Lujan*, 504 U.S. at 560, and thus imports its minimum standards. There are yet more reasons for applying Article III requirements in this Court. *See Emerald Int'l Corp. v. United States*, 54 Fed. Cl. 674, 677 n.5 (2002) (explaining how various constitutional and prudential standing arguments apply to this Court).

### 2. Mr. Kerl's complaint establishes Article III standing

The government trains its fire on the causation prong of the standing test,[10] but the government's argument fundamentally misunderstands the nature of Mr. Kerl's money-mandating claim in two ways. *First*, a money-mandating claim is, by definition, a claim based on *inaction* — the government's *failure* to pay — and thus there cannot be an "action" traceable to the government. That also means Mr. Kerl alleges precisely what he must: that the USPS was obligated to, but did *not*, pay him pursuant to a money-mandating statute. *See Aitken v. United States*, 162 Fed. Cl. 356, 362 (2022) ("Because Plaintiffs are government employees seeking backpay and related relief, . . . they have standing to raise those claims."). *Second*, money-mandating claims are ordinarily strict liability claims — the government's intent or relative fault does not matter. Indeed, counsel for the government agreed with this Court that "in every money-mandating claim, the question of negligence or the question of fault is not a question. [Instead,] the only question in every money-mandating claim is whether or not the [g]overnment met its duty to pay, the 'shall' pay" language from the money-mandating provision at issue. Tr. 16:11-18.[11]

---

[10] The government concedes both that it is "not disputing the injury-in-fact requirement of the standing [test]," Tr. 6:13-14, and that it is "not challenging redressability either." Tr. 8:3.

[11] This Court supposes that the language of a putative money-mandating provision itself may provide for some defense for non-payment based on lack of fault or scienter, but this Court cannot recall any such language from any context. Neither could the government. Tr. 16:19-22.

11

Ordinarily, then, there are just two questions in a money-mandating case: (1) whether the plaintiff is, in fact, within the class to whom money must be paid pursuant to the putatively money-mandating provision, and (2) whether the plaintiff has been paid already.  But those are merits questions, not jurisdictional ones.  And in any event, Mr. Kerl's allegation that the government owes him money pursuant to statute is an allegation that the Postal Service injured him *directly* — *i.e.*, via the inaction of non-payment.  The law requires nothing more of Mr. Kerl at this stage.  Accordingly, and at least for jurisdictional or standing purposes, it makes no difference whether Mr. Kerl alleges either that the "Postal Service was aware or should have been aware of the scammer's activity" or that the "Postal Service systems themselves were compromised by the scammer." Def. MTD at 15.  Because the FLSA is a money-mandating statute, and because, during the relevant period, Mr. Kerl was a USPS employee, the only question is whether the USPS has already paid Mr. Kerl.[12]  He alleges the USPS did not pay him and that suffices for this Court to conclude Mr. Kerl has standing to pursue the government for such non-payment.  In the language of the Supreme Court, Mr. Kerl is "himself the object of the government . . . inaction he challenges." *Lujan*, 504 U.S. at 562.

In sum, this Court rejects the government's approach to standing here.  The government cannot simply excerpt statements of law from other contexts — *e.g.*, from Administrative Procedure Act cases, *see* Def. MTD at 13 — and plop them down in a money-mandating case without careful analysis about how such principles might apply.  And while the government is generally correct that a plaintiff lacks standing where a complaint "suggests no substantial likelihood that victory in this suit would" cure the alleged harm, *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 45 (1976), if Mr. Kerl prevails, he would obtain a money judgment against the government.  Such a money judgment, of course, would address the very injury of non-payment about which he complains.[13]

---

[12] *See* Tr. 17:3-6 ("COURT: …But the question here is just whether or not the Government paid Mr. Kerl?  [GOVERNMENT COUNSEL]:  On the merits, yes, Your Honor."); *see also* Tr. 15:15-19 (government counsel framing "the merits" question as "whether the Postal Service did satisfy the FLSA"); Tr. 26:3-8 (government counsel agreeing that "the [merits] question is whether or not the [g]overnment satisfied the terms of the money-mandating provision").

[13] The government cannot rely here on cases involving plaintiffs challenging the government's regulation of a third-party upstream from the plaintiff.  Def. MTD at 13.  In such cases, the standing concern is that it is the independent choices or actions of the regulated third-party that have injured the plaintiff, but not the government's action.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (concluding that plaintiffs cannot show causation by "rely[ing] on speculation about the unfettered choices made by independent actors not before the court" (quotation marks

### C. Mr. Kerl's Complaint States a Proper FLSA Claim

As noted above, the government does not dispute that FLSA-based claims are generally money-mandating claims within this Court's subject-matter jurisdiction. *Aitken*, 162 Fed. Cl. at 362 (noting that "claims for unpaid overtime and liquidated damages arise under FLSA, which is a money-mandating source of law" (citing *Abbey*, 745 F.3d at 1369)). The government nevertheless moves to dismiss Mr. Kerl's FLSA claims, for failure to state a claim pursuant to RCFC 12(b)(6), *see* Def. MTD at 18, on the ground that the USPS did not violate the FLSA. According to the government, "the Postal Service's actions in issuing payment according to the bank information maintained in Mr. Kerl's LiteBlue account satisfied its obligations under the FLSA." *Id.* In the government's view, the mere fact that the USPS "issue[d] payment" *to someone*, *id.* at 19, is sufficient. *See* Tr. 17:10-17 (government arguing that, "in following its normal payroll procedures," the USPS "satisfie[d] the obligation to pay").

At least at this stage of the case — and construing Mr. Kerl's alleged facts in the light most favorable to him — this Court cannot side with the government.[14]

We begin with the actual language of the FLSA:

> Every employer shall pay *to each of his employees* who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at [specified] rates[.]

29 U.S.C. § 206(a) (emphasis added). Thus, the FLSA does not merely require an

---

omitted)). But Mr. Kerl's case does not remotely present such a factual scenario. His complaint is that *the government* failed to pay *him* — in other words, a *direct* injury the government caused Mr. Kerl. And, "[w]hile the [government] may not be the only party responsible for the injury alleged here, a plaintiff does not lack standing merely because the defendant is one of several persons who caused the harm." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 500 (7th Cir. 2005) (citing *Warth v. Seldin*, 422 U.S. 490, 504-05 (1975)); *see Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1323–24 (N.D. Ga. 2020) ("That a third party contributed to the sequence of events leading to Plaintiff's injury does not excuse Defendant, which contributed, from suit based on standing.").

[14] *Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353–54 (S.D.N.Y. 2014) ("drawing all reasonable inferences in favor of Plaintiff" in an FLSA case).

employer to cut checks or transmit funds to *someone* in the ether.  Rather, employers must actually transmit the pay "to each . . . employee[.]"  *Id.*  The regulations similarly make clear that "wages" are not "considered to have been paid" unless they are "received by the employee" and "are paid finally and unconditionally."  29 C.F.R. § 531.35; *cf.* 29 C.F.R. § 531.30 (providing that "[t]he reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee" but only where the employee has "receive[d] the benefits of the facility for which he is charged").

When may an employer pay an employee's salary to a third-party?  One case is "[w]here an employer is legally obliged, as by order of a court of competent and appropriate jurisdiction, to pay a sum for the benefit or credit of the employee to a creditor of the employee, trustee, or other third party, under garnishment, wage attachment, trustee process, or bankruptcy proceeding."  29 C.F.R. § 531.39(a).  But that is because such "payment to the third person [is] for the benefit and credit of the employee[.]"  *Id.*  Only then is such a payment "considered equivalent, for the purposes of [FLSA], to payment to the employee."  *Id.*  Another case where an employer may pay a third-party in lieu of its employee is "[w]here an employer is directed by a voluntary assignment or order of his employee to pay a sum for the benefit of the employee to a creditor, donee, or other third party."  29 C.F.R. § 531.40(a).  The latter regulation even cautions that "[f]or the protection of both employer and employee it is suggested that full and adequate record of all assignments and orders be kept and preserved and that provisions of the applicable State law with respect to signing, sealing, witnessing, and delivery be observed."  *Id*. § 531.40(b).  The government does not argue that the salary payments it made to the third-party fraudsters were "for the benefit or credit of the employee" — here, Mr. Kerl.  Nor does the government assert that it has an "adequate record" of Mr. Kerl's "assignment[]" of his salary to some other individual.  *Id.*

Now, the government would no doubt respond that it is *not* arguing that the USPS properly paid a third party, but rather that, in paying *someone* pursuant to the information in Mr. Kerl's LiteBlue account, the government satisfied any obligations to Mr. Kerl.  But that contention is difficult, if not impossible, to square with either 29 C.F.R. § 531.35 or the case law.  *See Acosta v. Cent. Laundry, Inc.*, 2019 WL 3413514, at *6 (E.D. Pa. July 29, 2019) ("Wages are not considered paid for purposes of the FLSA *until the employee receives the wages* 'finally and unconditionally.'" (emphasis added) (quoting 29 C.F.R. § 531.35)); *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 797–98 (W.D. Pa. 2013) (holding that an employer's FLSA obligation is only "met when the employer has paid, *and the employee has received*, the wages 'finally and unconditionally'" and that "[t]he employee *must*

14

*actually receive* the minimum wages" (emphasis added) (quoting 29 C.F.R. § 531.35)).

The government further argues that to the extent that Mr. Kerl did not receive his pay, he is responsible, and not the government. Def. MTD at 21 (arguing that Mr. Kerl "seeks to assign blame to the Postal Service for the scammer's trickery" and "his own submission of his credentials to the scammer"). But that sounds like an estoppel argument, and "[e]stoppel . . . is an affirmative defense that must be pled[.]" *Pei-Herng Hor v. Ching-Wu Chu*, 699 F.3d 1331, 1337 (Fed. Cir. 2012); *see* RCFC 8(c)(1). As such, it would be inappropriate, if not error, to decide the issue at the motion to dismiss stage. *See Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1097-98 (N.D. Cal. 2003) ("Because [the applicability of equitable estoppel] turn[s] on disputed facts, it is improper for the Court, on a Rule 12(b)(6) motion—the purpose of which is [to] test the sufficiency of the pleadings—to resolve this issue."); *Go For It, Inc. v. Aircraft Sales Corp.*, 2003 WL 21504600, at *2 (N.D. Ill. June 27, 2003) ("Generally, equitable estoppel is a question of fact inappropriate for resolution on a motion to dismiss."); *see also ABB Robotics, Inc. v. GMFanuc Robotics, Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995) ("[A] party advancing an estoppel defense must prove each of the elements thereof.").

This Court further notes that some "[f]ederal courts have repeatedly rejected equitable estoppel as an affirmative defense to an FLSA action, even where an employee is required, but fails to, record overtime hours worked." *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1320 (S.D. Fla. 2005) (citing cases); *see Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (Friendly, J.) ("The [FLSA] obligation [to pay employees accurately] is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping, 29 U.S.C.A. 211(c), and of appropriate payment, to the employee.").

Moreover, pursuant to the FLSA's plain terms, factual questions regarding an employer's fault are relevant not to whether the employer owes an employee back pay, but rather only to liquidated damages.[15] The United States District Court for the Eastern District of New York summarized the law well:

---

[15] *See* 29 U.S.C. § 260 ("Liquidated damages") ("[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages. . . .").

> "Under § 16(c) of the FLSA, 29 U.S.C. § 216(c), an employer who violates the compensation provisions of the Act is liable for unpaid wages 'and an additional equal amount as liquidated damages.'" *Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). "Liquidated damages under the FLSA are presumed in every case where violation of the statute is found." *Gayle v. Harry's Nurses Registry, Inc.*, No. 07–CV–4672 (NGG)(MDG), 2010 WL 5477727, at *6 (E.D.N.Y. Dec. 30, 2010) (citing 29 U.S.C. § 260). To rebut the presumption, defendant must show that it acted in good faith and had objectively reasonable grounds for believing its conduct did not violate the FLSA. *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1987); *see* 29 U.S.C. § 260. Defendant's burden "is a difficult one to meet," and "double damages are the norm." *Brock,* 833 F.2d at 19[.]

*Widjaja v. Kang Yue USA Corp.*, 2011 WL 4460642, at *8 (E.D.N.Y. Sept. 26, 2011); *see also Solis*, 934 F. Supp. 2d at 810 (explaining that "[a] willful [FLSA] violation involves an employer's knowledge or 'reckless disregard' of, or indifference to[,] the FLSA's requirements" (citing Supreme Court cases)); *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) ("To avoid liability for liquidated damages, the employer must make a showing of good faith and reasonable grounds for its conduct. If the employer fails to carry its burden of demonstrating good faith and reasonable grounds, the award of liquidated damages is mandatory."); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941–42 (8th Cir. 2008). The FLSA itself thus makes clear that where Congress wanted to make issues of fault relevant to an FLSA claim, Congress knew how to do so.[16]

Even in the context of liquidated damages, at least one circuit court has held that an employer cannot simply outsource to a payroll management company the duty to pay employees correctly, and then call it a day:

---

[16] The government, in its briefs, did not identify a single case "that illustrates a money-mandating claim where fault plays a role in whether the money-mandating claims is viable or not." Tr. 24:21-25 — Tr. 25:1; *see* Tr. 26:9:14 (government agreeing that it has no case law supporting "the proposition that the Plaintiff's fault can have some bearing on the [g]overnment's duty to pay under a money-mandating theory of recovery").

> The employers also contend that they established good faith by engaging Payroll Management. For purposes of the FLSA, Payroll Management is an "extension" of the employers. *Copeland v. ABB. Inc.,* 521 F.3d 1010, 1013 (8th Cir. 2008) (finding a third-party administrator for worker compensation claims an "employer" under the FLSA), *citing* 29 U.S.C. § 203(d) (defining the "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"). This court has rejected the proposition that delegating the payroll function to a subordinate satisfies the FLSA:
>
>> [T]he mandate of the statute is directed to the employer and he may not escape it by delegating it to others. The duty rests on the employer to inquire into the conditions prevailing in his business. He does not rid himself of that duty because the extent of the business may preclude his personal supervision, and compel reliance on subordinates. He must then stand or fall with those whom he selects to act for him . . . . the duty must be held personal, or we nullify the statute.
>
> *Goldberg v. Kickapoo Prairie Broad. Co.,* 288 F.2d 778, 781 (8th Cir. 1961), *citing People ex rel. Price v. Sheffield Farms–Slawson–Decker Co.,* 225 N.Y. 25, 121 N.E. 474 (N.Y. 1918) (Cardozo, J.).

*Chao*, 547 F.3d at 942–43. Perhaps, then, when the fraudsters accessed and edited Mr. Kerl's LiteBlue account without his permission, they essentially hacked the USPS. The Court takes no final position on that question for now, but suffice it to say, at this stage, the government did not address the status of LiteBlue as the government's putative agent. In other words, even if the fraudsters' phishing attack targeted Mr. Kerl, one way to view the facts pled in the complaint is that, ultimately, the government is responsible for any erroneous information in LiteBlue. *Cf. Perry v. City of New York*, 78 F.4th 502, 514 (2d Cir. 2023) ("In any wage-and-hour regulatory scheme, somebody must bear ultimate responsibility for recording time worked and for ensuring that payment is made. From *Caserta* on, we have recognized that the FLSA places the payment obligation on

*employers*[.]"). In that regard, the government agrees that "Mr. Kerl didn't tell the [USPS] to send [his] paycheck somewhere else[.]" Tr. 27:22-25.

The district court's decision in *Patterson v. Parallel Emp. Grp., Inc.*, 2021 WL 9098098, at *2–3 (S.D. Ind. Sept. 30, 2021), is instructive. In that case, the plaintiff employee alleged that her employer paid her salary into a paycard account — without her knowledge and consent — instead of the checking account she had designated. *Id.* at *1-2. The defendant employer moved for judgment on the pleadings, arguing that the plaintiff employee should be estopped from pursuing her claim due to her failure to object to the mispayments, a practice that had been going on for years. The district court rejected the estoppel argument: "Taking the allegations as true, as the court must at this stage, there is an issue of fact as to whether [plaintiff] Patterson authorized [defendant] Parallel to open the paycard account in her name." *Id.* at *3 (noting that "the court must resolve all reasonable inferences in [the plaintiff employee's] favor," and that plaintiff "allege[d] [the employer] opened the paycard account without her consent or knowledge").

Notably, the district court in *Patterson* further ruled the plaintiff lacked a proper FLSA claim, but *Patterson* is readily distinguishable from this case in a manner that supports Mr. Kerl. In *Patterson*, the plaintiff: (1) "acknowledge[d] that for three years, Parallel paid all of her wages into the paycard account that was in her name"; (2) "d[id] not allege that Parallel paid her less than the amount she was owed"; and (3) "d[id] not allege that Parallel failed to pay her on the proper schedule." 2021 WL 9098098, at *3. "In other words," according to the district court, "it [wa]s undisputed that Parallel paid [the employee's] wages on schedule and in full." *Id.* Thus, in *Patterson*, the plaintiff's "FLSA claim appear[ed] to be based simply on the fact that the wages that she acknowledges were paid in full were deposited into the incorrect account[.]" *Id.* But the plaintiff "ha[d] not cited to any authority concluding an employer violates the FLSA when it deposits an employee's wages into the wrong account." *Id.*

To put a finer point on it, there was no dispute in *Patterson* that the employer had transmitted its employee's wages to an account she owned; the employee simply alleged it was the wrong account. In contrast, Mr. Kerl does not concede that he was paid. Nor does Mr. Kerl allege that the USPS merely deposited his salary into the incorrect account (but that he owned). Rather, Mr. Kerl alleges that the USPS, without proper authorization, paid *someone else* his salary into an account *he did not own*. And although the district court criticized the plaintiff in *Patterson* for "wait[ing] *three years* before approaching [her employer] about her wages[,]" 2021 WL 9098098, at *3, Mr. Kerl's

18

complaint does not appear to suffer from such an adverse fact.

\* \* \* \*

The government is trying to square a circle. On the one hand, it argues that the FLSA is satisfied merely by "sending or transmitting the money, the act of dispersing [the pay.]" Tr. 20:5-7. The government then further asserts that all the FLSA requires is the employer's "good faith belief" it is paying the correct person. *See, e.g.*, Tr. 33:10-13; Tr. 36:13-17. But that means — and the government agreed to this, in line with common sense — that an employer cannot just send an employee's pay "to whomever [it] want[s]." Tr. 20:8-10. Incredibly, however, the government then also asserts that its payment to third-party hackers would satisfy the FLSA even if they had hacked the government payroll system directly. Tr. 46:23 — 48:9; *but see* Tr. 50:13-16 (government counsel agreeing that "[t]he [merits] question is whether or not . . . the employer remitted payment *to the employee*" (emphasis added)). And yet all along the government repeatedly suggests that Mr. Kerl, rather than the government, is responsible for the phishing scheme's success — an argument which appears to implicate notions of relative fault, despite the government's repeated assertions that it is not making such an argument. The Court is left thoroughly confused about the government's precise position.

In any event, the Court is far from convinced that issues of relative fault — *i.e.*, as between Mr. Kerl and the USPS — are at all relevant to a money-mandating claim, generally, or to an FLSA claim, in particular (except where provided by statute). Indeed, the government could not explain how its view could be reconciled with the general rule that money-mandating claims — and specifically "pay statutes"— are "strict liability" claims. Tr. 34:19-23.[17] But, at least at this stage of the case — and construing the facts alleged in the light most favorable to Mr. Kerl — he has properly stated a money-mandating claim for compensation pursuant to the FLSA. He is therefore entitled to proceed to discovery. If the government wants to assert some sort of affirmative defense based on estoppel or on relative fault — assuming the government can convince this Court that such a defense exists — it is free to pursue the factual predicates for such

---

[17] *See, e.g.*, *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1308 (D. Colo. 2015) ("The FLSA, with limited exceptions, is a strict-liability statute. Plaintiffs are not required to demonstrate invidious intent or any other type of culpable mind."); *Higar v. Task Force of Texas, LLC*, 2018 WL 3849853, at *1 (E.D. Tex. July 12, 2018) ("Generally, however, the FLSA is a 'strict liability' offense, meaning an employer's intent to comply is not relevant to whether the employer violated the statute."), *report and recommendation adopted*, 2018 WL 3837862 (E.D. Tex. Aug. 11, 2018).

theories during discovery. As of yet, however, the government has not provided this Court with a reason to conclude that Mr. Kerl lacks a viable claim on the facts pled.

## V.  CONCLUSION

For the forgoing reasons, the government's motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6) is **DENIED**.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Chief Judge
